Kevin J. Nash, Esq.
**Goldberg Weprin Finkel Goldstein LLP**
*Attorneys for Debtor/Plaintiff*
1501 Broadway, 22nd Floor
New York, New York 10036
Phone: (212) 221-5700

Michael Levine, Esq.
**Levine & Associates, P.C.**
*Proposed Special Litigation Counsel to the Debtor*
15 Barclay Road
Scarsdale, NY  10583
Phone: (914) 600-4288

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| In re: | |
| | : Chapter 11 |
| **RS OLD MILL, LLC,**            , | Case No. 17-22218 (RDD) |
| | : |
| **Debtor** | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| **RS OLD MILL, LLC,** | Adversary Proceeding No. |
| Plaintiff, : | |
| - against - | ADVERSARY |
| : | <u>PROCEEDING COMPLAINT</u> |
| **SUFFERN PARTNERS LLC, BRIDGEWATER** | |
| **CAPITAL PARTNERS LLC, ISAAC GENUTH,** | : |
| **MARK YUNGER a/k/a "MARK JUNGER," GOLDIE** | |
| **REISMAN, MOSES REICHMAN, RS OLD MILLS** : | |
| **RD LLC., DAVID FLEISCHMANN, THOMAS** | |
| **LANDRIGAN, and CPIF LENDING, LLC,** | : |
| | |
| **Defendants.** : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT TO SET ASIDE FRAUDULENTLY INDUCED**
**CONVEYANCE OF DEBTOR'S PROPERTY**
**AND FOR MONEY DAMAGES**

Plaintiff-Debtor RS Old Mill, LLC (the "Debtor" or the "Plaintiff"), by and through its undersigned attorneys, as and for its Complaint against the named Defendants, respectfully alleges as follows:

**NATURE OF ACTION AND THE RELIEF SOUGHT**

1. This is an action (i) to avoid, pursuant to 11 U.S.C. §549(a) unauthorized and fraudulently induced conveyances of the Debtor's real property (its sole asset) without the knowledge or permission of the Court, and to recover the property pursuant to 11 U.S.C. § 550 from the mediate transferee of the property, (ii) to discharge that portion of a purported lien on the property in excess of $15.5 million, and (iii) for money damages against the participants of an illegal scheme to divest the Debtor of its property.

2. Simply stated, or about November 28, 2016, the Debtor entered into a written contract of sale with Novartis Corporation (the "Novartis-Debtor Contract of Sale"), whereby Debtor agreed to purchase from Novartis Corporation certain developed real property situated in Rockland County (the "Old Mill Road Property") for a purchase price of $18 million.

3. The Debtor tendered a down payment of $2,500,000.00, and then (on or about November 28, 2016) the Debtor entered into a financing agreement with Defendant Bridgewater Capital Partners ("Bridgewater"). That financing agreement (the "Bridgewater Agreement") provided, *inter alia*, that Bridgewater would obtain (from an outside source), or itself provide, a loan in the amount of Eighteen Million ($18,000,000.00) to Debtor as financing for the acquisition of the Old Mill Road Property.[1] The principals of Bridgewater are Defendants Isaac Genuth ("Genuth") and Mark Yunger a/k/a "Mark Junger" ("Yunger").

---

[1] Pursuant to the Bridgewater Agreement, Bridgewater was also required, at its own expense, to, inter alia, (i) obtain all necessary permits, approvals and the like regarding the development, sale, lease or joint venturing of the Old Mill Road Property, or portions thereof (the "Project"); (ii)

4. On February 13, 2017, the Debtor filed a Chapter 11 petition with this Court and, on June 26, 2017, the Debtor filed a Statement of Intention to assume the Novartis-Debtor Contract of Sale. On July 13, 2017, this Court issued an Order authorizing the assumption by the Debtor of the Novartis-Debtor Contract of Sale.

5. Prior to the closing of the purchase by the Debtor of the Old Mill Road Property, the Debtor hired Thomas C. Landrigan, Esq. as its closing attorney for that transaction. Bridgewater, ostensibly in compliance with its obligations under the Bridgewater Financing Agreement, had entered into negotiations with CPIF Lending LLC ("CPIF") for the financing of the purchase of the Old Mill Road Property.

6. On July 21, 2017, Bridgewater filed a motion with this Court to provide relief from a prior (July 13, 2017) Order requiring the Novartis-Debtor Contract of Sale closing to take place by a date certain. In the said motion, Defendant Yunger represented to the Court that "Bridgewater has hired appraisers, environmental consultants, engineers, surveyors, and a commercial broker [and] is holding 20 million [dollars] in escrow and is ready, willing and able to fund the Debtor." That representation was false, although not known to the Debtor at the time to be false.

7. In that regard, in or about July or August of 2016, approximately a month or so prior to the closing of the Debtor's purchase of the Old Mill Road Property, a scheme to defraud the Debtor and this Court was hatched among Defendants Landrigan (ostensibly the closing attorney for the Debtor, but who was secretly also counsel for Bridgewater), Defendant Genuth and

---

employ all necessary architects, engineers, designers, expediters and other service providers to advance and conclude the Project; (iii) market and promote the Project; and (iv) perform other services necessary to further the Project. As compensation for the services to be provided by Bridgewater, Bridgewater was to receive "equity participation in [RS Old Mill LLC] in an amount not more than One Million Dollars in value as of the date of the closing."

Defendant Yunger (the principals of Bridgewater), David Fleischmann (counsel to Mrs. Reisman), and attorneys representing Defendant CPIF.

8. Simply stated, the scheme took the following form. Instead of Bridgewater financing the closing of the transaction via obtaining a loan for $18 million as it was contractually required to do, in which event the Debtor would have received the Old Mill Road Property in fee simple, and received another $2.5 million to pay its creditors (because it had already paid a down payment of $2.5 million toward the $18 million purchase price), Bridgewater and its co-conspirators modified the transaction at the last minute. The scheme that they hatched was that, after closing by the Debtor on the purchase of the Old Mill Road Property for $18 million, the Debtor would simultaneously convey the same to a new entity for no consideration, which new entity would then convey the same to a third entity for $30 million. And all, it was intended by the conspirators, was to take place without the knowledge or approval of this Court.

9. Insofar as it was represented to the Debtor, (i) the $12 million excess over the $18 million purchase price to Novartis would ultimately go to the Debtor, who would then pay any remaining creditors and move to dismiss its Chapter 11 petition, and (ii) purportedly no Bankruptcy Court approval was required for that transaction. The Debtor literally had no choice but to rely on the representation that the õmodified transactionö was legal even absent approval by the Court because, with the Court-imposed deadline to close the transaction looming, if the Debtor did not close under the õnewö Bridgewater terms, it would be in breach of its contract with Novartis, lose its $2.5 million down payment, and have no ability to pay its remaining creditors.

10.  As it turned out, however, Bridgewater's "new" structure was never intended by Bridgewater or its co-conspirators to result in any funds finding their way to the Debtor, and, in fact, no part of the said funds were ever subsequently paid to the Debtor.

11.  On August 8, 2017, Defendant Landrigan (the Debtor's ostensible real estate closing counsel), in furtherance of the said fraudulent scheme, caused to be formed an entity called RS Old Mills Rd LLC, and Defendant Genuth (one of the principals of Bridgewater) formed an entity called RSOM Corp. ("RSOM").  Defendant Goldie Reisman was made the sole shareholder of RSOM.  The following day, August 9, 2017, Defendant Fleishman (counsel to Defendant Reisman) formed an entity called Suffern Partners LLC ("Suffern") and drafted an Operating Agreement that provided that Defendant Goldie Reisman was a 99% Member, and RSOM a 1% Member, of Suffern.

12.  Also in furtherance of the fraudulent scheme, on August 16, 2017 Defendant Landrigan filed a letter with the Court asking the Court to extend the time required for the closing on the purchase by Debtor of the Old Mill Road Property, contending that "title issues remain unsettled" because (i) a February 2017 survey needed to be updated, (ii) "survey charges" needed to be paid, and (iii) multiple building violations existed.  Defendant Landrigan did not disclose to the Court that the scheme had been hatched (and was in the process of being implemented) to divest the Debtor of the Old Mill Road Property for no consideration immediately after the Debtor acquired the same.

13.  On September 6, 2017, the closing of the Debtor's purchase of the Old Mill Road Property took place.  Consistent with the fraudulent scheme, the following documents were signed and delivered: (i) a deed, executed by Novartis on August 31, 2017, but dated September 1, 2017, was prepared by Defendant Landrigan, executed by Novartis, and delivered to the

Debtor for a purchase price of $18,000,000.00; (ii) a deed dated September 5, 2017 was prepared by Defendant Landrigan and executed, at the direction of Defendant Landrigan, by the Debtor conveying the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC (the entity formed by Defendant Landrigan) for zero consideration; (iii) a deed dated September 5, 2017 was prepared by Defendant Landrigan, and executed by õAvrohom Kaufmanö on behalf of RS Old Mills Rd LLC (whose address was listed as 40 Matthews Street, Suite 203, Goshen, New York ó Defendant Landriganøs office address) conveying the Old Mill Road Property to Suffern (the entity formed by Defendant Fleischman and owned by Mrs. Reisman) for $30,000,000; (iv) a loan agreement, dated September 6, 2017, was executed by Suffern and CPIF, wherein CPIF loaned to Suffern the sum of $33,000,000.00 and received a mortgage on the Old Mill Road Property in that amount; and (iv) a fraudulent purported õopinion letterö dated September 6, 2017 was executed and delivered by Defendant Fleischmann which, among other things, falsely represented that no Bankruptcy Court approval of that above-described series of simultaneous transactions was required.

14.  On November 1, 2017, Douglas Pick, bankruptcy counsel for the Debtor, requested that the Court issue a õconsentö Order dismissing the Debtorøs Chapter 11 petition.  Had that õconsentö order been issued by the Court, the fraudulent scheme would have culminated without the Courtøs knowledge that the Debtor had been divested of its sole asset for no consideration and without the prior approval of the Court.  Moreover, the scheme would have culminated to the detriment of the Debtor because the conspirators never intended to (and did not) tender to the Debtor the promised $12 million excess between the $18 million paid to Novartis and the $30,000,000 sale price to Suffern.  In fact, to date, the Debtor has not received a penny of those

promised funds despite the numerous promises that whatever was due to the Debtor would be forthcoming.

15.  Moreover, on November 7, 2017, Douglas Pick filed operating reports for the Debtor for the time period September 1, 2017 through October 31, 2017.  Those operating reports did not disclose the acquisition of the Old Mill Road Property by the Debtor, nor its subsequent conveyance for no consideration.  Moreover, these operating reports falsely indicated that the Debtor owned a purported õsecurity depositö for the Old Mill Road Property of $2,500,000.  In fact, that reference was to the down payment tendered by the Debtor for the purchase of the Old Mill Road Property, which deposit had been paid to Novartis at the September 6, 2017 closing and was no longer the property of the Debtor.

16.  In this adversary proceeding, the Debtor seeks (i) an Order setting aside the conveyance of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC and the discharge of any amount in excess of $15.5 million of the mortgage filed in favor of Defendant CPIF against the Old Mill Road Property, or, alternatively, (ii) a monetary Judgment against Suffern and its principals for $12 million, provided that the same is collectible, and (ii) a compensatory and punitive damage monetary award against the Defendants for their fraudulent and illegal conduct.

## JURISDICTION AND VENUE

17.  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

18.  This case is õcoreö proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A) [fraudulent conveyance and avoidable post-petition transfer are core proceedings under 28 U.S.C. § 157(b)(2)], b(2)(E) and/or (b)(2)(O).

19. To the extent that any claims alleged by the Debtor herein may be determined to be "non-core" matters, the Debtor consents to the entry of final orders and judgments by this Court with regard to all claims and issues concerning or arising in connection with this adversary proceeding.

20. This Court has personal jurisdiction over each of the Defendants.

21. Pursuant to Bankruptcy Rule 7020, relief is asserted against the Defendants jointly and severally, and a single complaint is being brought against all of the Defendants, as the allegations against each of the Defendants essentially arise out of the same transaction, occurrence, or series of transactions or occurrences and said allegations raise common questions of law and fact as to all Defendants.

## THE PARTIES

22. At all times relevant to this Complaint, the Debtor was, and still is, a limited liability company, organized and existing pursuant to laws of the State of Delaware, with a principal place of business in the County of Rockland.

23. On February 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court and an Order for Relief was simultaneously entered.

24. At all times relevant to this Complaint, Defendant Suffern Partners LLC was, and still is, a limited liability company, organized and existing pursuant to laws of the State of New York, with a principal place of business in the County of Rockland.

25. At all times relevant to this Complaint, Defendant Goldie Reisman was, and still is, an individual residing in the State of New York, County of Kings.

26. At all times relevant to this Complaint, Defendant Moses Reisman was, and still is, an individual residing in the State of New York, County of Kings.

27. At all times relevant to this Complaint, Defendant RS Old Mills Rd LLC was, and still is, a limited liability company, organized and existing pursuant to laws of the State of New York, with a principal place of business in the County of Orange.

28. At all times relevant to this Complaint, Defendant David Fleischmann was, and still is, an individual residing in the State of New York, County of Nassau, and an attorney licensed to practiced law in the State of New York.

29. At all times relevant to this Complaint, Defendant Bridgewater Capital Partners LLC was, and still is, a limited liability company, organized and existing pursuant to laws of the State of New York, with a principal place of business in the County of Rockland.

30. At all times relevant to this Complaint, Defendant Isaac Genuth was, and still is, an individual residing in the State of New York, County of Rockland.

31. At all times relevant to this Complaint, Defendant Mark Yunger was, and still is, an individual residing in the State of New York, County of Rockland.

32. At all times relevant to this Complaint, Defendant Thomas Landrigan was, and still is, an individual residing in the State of New York, County of Westchester, and an attorney licensed to practiced law in the State of New York.

33. At all times relevant to this Complaint, Defendant CPIF Lending LLC was, and still is, a limited liability company, organized and existing pursuant to laws of the State of Washington, and which conducts business in the County of Rockland.

## FACTUAL ALLEGATIONS COMMON TO EACH COUNT

### *I.  The Novartis-Debtor Contract of Sale*

34.    Heretofore, and on or about November 28, 2016, the Debtor entered into a written contract of sale with Novartis Corporation ("Novartis"), whereby Debtor agreed to purchase from Novartis the developed real property situated in Villages of Suffern, New York and Montebello, New York, comprised of three parcels described as follows: (i) Parcel A – three plots of land; (ii) Parcel B – four plots of land; and (iii) Parcel C – two plots of land, having the addresses of 25 Old Mill Road, in the Town of Ramapo, Village of Suffern and 19 Hemion Road in the Village of Montebello (collectively hereinafter referred to as the "Old Mill Road Property").

35.    The said contract of sale for the Old Mill Road Property (the "Original Novartis-Debtor Contract of Sale"),[2] *inter alia*, set forth a purchase price of Eighteen Million Dollars ($18,000,000) for the Old Mill Road Property, permitted the Debtor to conduct Due Diligence for a period of forty-Five days from November 28, 2016, and required a closing of the sale to take place thirty days after the expiration of the Due Diligence Period.

## II.  The Bridgewater Financing Agreement

36.    On or about November 28, 2016, the Debtor entered into a "Project Management Agreement" (the "Bridgewater Agreement") with Bridgewater Capital Partners ("Bridgewater"). The Bridgewater Agreement provided, *inter alia*, that Bridgewater would obtain (from an outside source), or itself provide, a loan in the amount of Eighteen Million ($18,000,000.00) to Debtor as financing for the acquisition of the Old Mill Road Property.  Pursuant to the Bridgewater Agreement, Bridgewater was also required, at its own expense, to, *inter alia*, (i) obtain all necessary permits, approvals and the like regarding the development, sale, lease or

---

[2]   The Original Novartis-Debtor Contract of Sale was modified by an Amendment dated January 12, 2017.  The Original Novartis-Debtor Contract of Sale, together with the January 12, 2017 Amendment are hereafter collectively referred to as the "Novartis-Debtor Contract of Sale."

joint venturing of the Old Mill Road Property, or portions thereof (the "Project"); (ii) employ all necessary architects, engineers, designers, expediters and other service providers to advance and conclude the Project; (iii) market and promote the Project; and (iv) perform other services necessary to further the Project.

37.  The Bridgewater Agreement further provide that one of its principals, Isaac Genuth, would act as the head project manager and would be responsible for the overall supervision and conduct of the services to be provided by Bridgewater.

38.  As compensation for the services to be provided by Bridgewater, Bridgewater was to receive "equity participation in [RS Old Mill LLC] in an amount not more than One Million Dollars in value as of the date of the closing."[3]  Additionally, Bridgewater received an advance "commitment fee" aggregating $170,000.00

### III. The Bankruptcy Filing and the State Court Action

39.  Subsequent to the execution of the Novartis-Debtor Contract of Sale for the Old Mill Road Property, a dispute arose among the Debtor and Novartis as to the right of the Debtor to perform certain environmental testing on the Old Mill Property.  Novartis took the position, *inter alia*, that the Debtor would be in breach of the Contract of Sale, and sacrifice its ability to close the transaction, if it did not close without certain environmental testing, and the Debtor took the position that it was not required to close on the transaction until such environmental testing took place.

40.  As a result, and in order to prevent prejudice to the Debtor's rights, Debtor took two actions.  First, on February 10, 2017, the Debtor filed an action against Novartis in the Supreme

---

[3]  The Bridgewater Agreement contained the following indecipherable example by way of "explanation" as to the interpretation of that provision: "By way of example, if the Property is worth Eighteen Million Dollars at the time of closing [Bridgewater] shall be entitled to a ten percent ownership in [RS Old Mill LLC] upon its Acquiring title to the Property."

Court of the State of New York, Rockland County, under Index number 030713/2017 (the "State Court Action"), seeking, *inter alia*, (i) a declaratory judgment as to the Debtor's rights to conduct the said environmental testing, and (ii) an injunction directing Novartis to give access to the Debtor to the Old Mill Property for the purpose of conducting such testing.

41.   Secondly, on February 13, 2017, the Debtor filed the Chapter 11 bankruptcy petition in this case.  On March 2, 2017, Novartis moved this Court to compel the Plaintiff to either accept or reject the Novartis-Debtor Contract of Sale within thirty days.  The Debtor consented to that request, provided that the Debtor was afforded an opportunity, within that time period, to conduct limited Phase II sampling in that time period.

42.   At the hearing of that motion, this Court indicated that the issue of whether the Debtor should be afforded the opportunity to conduct sample testing was primarily a matter of state law and that, since the State Court Action had been commenced prior to the commencement of this Bankruptcy case, the automatic bankruptcy stay should be lifted for the limited purpose of permitting the Supreme Court to decide that one limited issue.  This Court's Order provided as follows, in relevant part:

> Pursuant to 11 U.S.C. § 362(d)(1), the automatic stay is partially vacated solely to permit the parties to promptly pursue entry of an Order in the action entitled: RS Old Mill, LLC, Plaintiff against Novartis Corporation, Defendant (Index No. 030713/2017) (the "State Court Action") so as to either permit or deny RS Old Mill, LLC the ability to conduct those tests set forth in the Invasive Investigation Notice dated December 15, 2016 ...

43.   On June 26, 2017, the court in the State Court Action issued a decision and order denying the Debtor's request to conduct environmental testing on the Old Mill Road Property.  On the same date, the Debtor filed a Statement of Intention to assume the Novartis-Debtor Contract of Sale.  On July 13, 2017, this Court issued an Order authorizing the assumption by the Debtor of the Novartis-Debtor Contract of Sale.

44. On July 21, 2017, Bridgewater filed a motion with this Court to provide relief from the Court's July 13, 2017 Order Authorizing Assumption of Agreement for the Debtor-Novartis Agreement. In the said motion, Bridgewater's principal, Mark Yunger ("Yunger"), represented to the Court that "Bridgewater has hired appraisers, environmental consultants, engineers, surveyors, and a commercial broker [and] is holding 20 million [dollars] in escrow and is ready, willing and able to fund the Debtor."[4] That was entirely inaccurate.

### IV.  The Hatching of the Fraudulent Scheme to Defraud the Debtor and the Court

45. In or July or August of 2017, a telephone conference call took place by and among, at least, Thomas Landrigan, Esq. (counsel to Bridgewater and purported real estate closing counsel to the Debtor), David Fleischmann, Esq. (counsel to Suffern Partners and Goldie Reisman), Isaac Genuth and Mark Yunger (principals of Bridgewater), attorneys from Cassin & Cassin LLP (counsel to CPIF), attorneys from the title insurance company (which would guarantee title to the Old Mill Road Property for Suffern and CPIF), other attorneys, and a consultant to the Debtor.

46. During the course of that discussion, counsel for CPIF indicated that it would not close on any loan transaction with the Debtor because (i) it did not lend post-petition funds to debtors in general, and (ii) the Debtor had not obtained Bankruptcy Court approval for any such financing in any event. The participants to that call, then hatched a scheme whereby the Debtor,

---

[4]   Specifically, Yunger represented that "Bridgewater has made significant investments to effectuate the Financing Agreement and the closing on the Agreement of Sale, including initially segregating $26,000,000 in funds held by its title company in escrow since February, employing five (5) people full time for this transaction, and hiring appraisers, environmental consultants, environmental engineers, and consultants as well as a full time commercial broker for leasing. Upon information and belief, that was inaccurate, as all funds used to hire any professionals came from the Debtor. Upon information and belief, the "full time commercial broker" referred to by Yunger was actually a company which he owned or was in control of.

after closing with Novartis and acquiring the Old Mill Road Property, would immediately make a "paper transfer" of the Old Mill Road Property to another entity, which would then obtain the financing from CPIF for the purchase. That concept, however, was rejected by CPIF's attorneys because, they stated, the conveyance from the Debtor to another entity would require the approval of the Bankruptcy Court. The conspirators than advanced the concept of making yet another transfer (from the entity that would receive the property from the Debtor) to a third entity that would obtain the financing from CPIF and pledge the Old Mill Road Property as collateral. In that way, the conspirators reasoned, CPIF and the third entity could maintain that they were shielded from any claim that they had violated any bankruptcy law because the property was received from an entity not in bankruptcy and the money for the acquisition was loaned by CPIF to an entity that had not received the property from a bankrupt company without Bankruptcy Court approval.

47. As part of the fraudulent scheme, the Conspirators represented to the Debtor, both orally during that telephone call and in writing thereafter, that that structuring of the transaction in the manner described (Debtor-to-Entity 2-to-Entity 3; loan by CPIF to Entity 3; property pledged as collateral to CPIF by Entity 3) was legal and did not require Bankruptcy Court approval. Additionally, and as a further part of the fraudulent conspiracy, and so as to persuade the Debtor that the planned transaction was legal, the conspirators advised the Debtor that a purported "opinion letter" stating that no judicial approvals were necessary for the contemplated series of transactions would be drafted by David Fleischmann (Suffern's and the Reisman's attorney), and a "title policy" would be issued by Commonwealth.

48. Thus, insofar as it was represented to the Debtor, the transfer of the Old Mill Road Property by the Debtor to an intermediate entity, and that entity's re-transfer of the property to a

third entity, was perfectly legal and required no Bankruptcy Court (or other court) approval, which representation would be "corroborated" by Defendant Fleischman's purported "opinion letter" and the title insurance policy. Moreover, it was represented to the Debtor that the "resale" of the Old Mill Road Property to the third entity would be for a purchase price of $30 million, leaving an excess of $12 million over the $18 million purchase price that the Debtor was required to pay to Novartis. The Debtor intended that the creditors of the Debtor would be paid from those excess funds, or that the Debtor or its assignee would be given a majority equity interest in the ultimate acquiring entity and have its principals pay its creditors directly.

49. In truth and in fact, however, the Conspirators knew that the series of transactions that they devised were not legal because no Bankruptcy Court approval would be sought or obtained for the transfer from the Debtor to Entity 2, and that that transaction was voidable and would taint the further transfer of the Old Mill Road Property to Entity 3.

50. In truth and in fact, the Conspirators had no intention of tendering any equity interest in Entity 3 to the Debtor, but rather, intended to keep 100% of the equity interest in the acquiring entity, and the $12 million in excess funds, for themselves, use the same for their own benefit, and shut out the Debtor from the benefit of its bargain with Novartis, all while surreptitiously hiding their scheme from the Bankruptcy Court.

51. In truth and in fact the Conspirators intended to pay the nominal amount of money owed by the Debtor to creditors and then have the Debtor move to dismiss its Bankruptcy Petition. In that way, the Conspirators intended to keep their scheme, and particularly the fact that they transferred the Debtor's property without Bankruptcy Court approval, hidden from the Court.

52.  In furtherance of the fraudulent scheme, on August 8, 2017, Defendant Landrigan, the ostensible real estate attorney for the Debtor retained to oversee the closing of the purchase of the Old Mill Road Property (but who was, unbeknownst to the Debtor, actually secretly representing Bridgewater and its principals in various personal and business matters as well), formed an entity in New York called "RS Old Mills Rd LLC."  The DOS address for service of process on that entity was 40 Matthews Street, Suite 203, Goshen, New York – Defendant Landrigan's law firm's then-address.

53.  Also in furtherance of the fraudulent scheme, on August 8, 2017 Isaac Genuth (a principal of Bridgewater) caused to be formed the entity RSOM Corp.  Goldie Reisman was the sole shareholder of RSOM Corp. and Moses Reisman, Isaac Genuth and Mark Yunger were entirely in charge of its affairs. [5]

54.  Also in furtherance of the fraudulent scheme, the following day, August 9, 2017, David Fleishmann, Esq., caused to be formed the entity Suffern Partners LLC ("Suffern").  The DOS Address for service of process on that entity was c/o Goldie Reisman, 54 West 47th Street, Ste 5FE, New York, NY (which was actually Defendant Bridgewater's address).  On the same date, Defendant Fleishmann drafted a Shareholder's Agreement wherein Goldie Reisman was granted a 99% share interest in Suffern, and the entity RSOM Corp was granted a 1% share interest in Suffern.

---

[5]  On August 23, 2017, David Fleischmann, Esq., caused to be filed an Amendment to the Certificate of Incorporation of RSOM Corp. which changed to purpose of the corporation to: "Owning a direct interest in and acting as managing member of Suffern Partners LLC, a New York limited liability company ("the Borrower") that owns the property located at 25 Old Mill Road, Suffern, NY ..."  The same also provided that "CPIF Lending, LLC, a Washington limited liability company is an intended third-party beneficiary of this Paragraph 10."

55.  Although Goldie Reisman was the sole owner of record for Suffern, Moses Reisman, Isaac Genuth and Mark Yunger were entirely in charge of its affairs.

56.  On August 14, 2017, this Court granted the prior motion by Bridgewater for relief from the Court's July 13, 2017 Order Authorizing Assumption of Agreement to the extent of extending the time to close on the Novartis-Debtor Contract of Sale to August 17, 2017.

57.  On August 16, 2018, Defendant Landrigan filed a letter with this Court (and thereby was listed as an attorney of record for the Debtor), in which Defendant Landrigan represented to the Court that he had "recently taken over from prior real estate closing counsel for Debtor with the goal of trying to guide [the Old Mill Road Property purchase from Novartis] toward conclusion." Defendant Landrigan further represented that the closing could not take place the following day (as then-required by the Court's August 14, 2017 Order) for the reason that "title issues remain unsettled" because (i) a February 2017 survey needed to be updated, (ii) "survey charges" needed to be paid, and (iii) multiple building violations existed. Defendant Landrigan did not disclose to the Court that a scheme was underway to divest the Debtor of the Old Mill Road Property without the approval of the Court, nor that entities had already been formed to promulgate that scheme.

58.  The closing on the Novartis-Debtor Contract of Sale in fact was completed on September 6, 2017. A deed dated, executed by Novartis on August 31, 2017, but dated September 1, 2017, was prepared by Thomas C. Landrigan, Esq., executed by Novartis to the Debtor and thereafter duly recorded in the Rockland County Clerk's Office under Inst Number 2017-00029310 on September 14, 2017. The consideration recited in the recording cover sheet was $18,000,000.00.

59.  Simultaneously, and in furtherance of the Defendant's fraudulent scheme, a deed dated September 5, 2017 was prepared by Thomas Landrigan, which purported to convey the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC (the entity formed by Defendant Landrigan).  That deed was executed by RS Old Mill, LLC, and returnable to David Fleischmann Esq.  The recording cover sheet listed the consideration for the transfer as zero ("$0.00").  The real Property Transfer Report listed the address of the "buyer" 40 Matthews Street, Suite 203, Goshen, New York – Defendant Landrigan's office address.

60.  Simultaneously, and also in furtherance of the Defendant's fraudulent scheme, a deed dated September 5, 2017 was prepared by Thomas Landrigan, which purported to convey the Old Mill Road Property from RS Old Mills Rd LLC (the entity formed by Defendant Landrigan) to Suffern (the entity formed by David Fleischmann).  That deed was returnable to David Fleischmann Esq.  The recording cover sheet listed the consideration for the transfer as $30,000,000.00.  The real Property Transfer Report listed the officer of the "buyer" as Goldie Reisman.

61.  Simultaneously, a loan agreement was entered into between CPIF and Suffern, dated September 6, 2017, wherein CPIF agreed to lend to Suffern the sum of $33,000,000.00 for the acquisition of the Old Mill Road Property.  The said loan agreement required, among other things, that Suffern place the Old Mill Road Property up as collateral to secure the said loan, and further required Suffern to "demonstrate[ ] in writing … that [Suffern] and all other necessary parties have (a) fully satisfied all obligations associated with the purchase of the applicable Property and or any entities that previously owned the Property … (b) approval of its purchase by any governing bankruptcy court, if applicable."

62.  CPIF was actually aware at the time, however, that Suffern could not legally place the Old Mill Road property up as collateral for any loan because Suffern had knowingly obtained the property from an entity that had obtained the property from a debtor in a bankruptcy case without the permission of the Bankruptcy Court, nor could Suffern demonstrate in writing that bankruptcy court approval was purportedly unnecessary for the transaction.  The purported loan agreement was simply a façade intended to coverup the illegal and fraudulent actions of the Defendants.

63.  Simultaneously, and also in furtherance of the fraudulent scheme, Defendant Fleischmann executed and delivered a purported õopinion letterö dated September 6, 2017 (the õFleischmann Opinion Letterö), wherein he represented, *inter alia*, that he had examined the mortgage agreement executed by Suffern (wherein Suffern pledged the Old Mill Road Property as collateral for the loan from CPIF) and that (i) Suffern had the õfull power, authority and legal right to execute [and] deliverö the documents (including the mortgage); (ii) õno consent, approval, or other authorization of or by any court, administrative agency or other governmental authority is required in connection withö Suffernøs execution or compliance with any of the loan documents (including the mortgage); (iii) õthe execution and delivery of an compliance with the loan documents by [Suffern] will not conflict with or result in a breach of any applicable law, judgment, order, writ, injunction, decree, rule or regulation of any court í ;ö (iv) there is no action, suit or proceeding pending against or affecting í  the [Old Mill Road] Property í  before any court í  or which brings into question the validity of the transactions contemplated by the Loan Documents;ö (v) upon recording the mortgage on the Old Mill Road Property, CPIF would have õa valid and duly perfected priority lien encumbering theö Old Mill Road Property; and (vi)

"we are not aware of any matters contrary to the representations and warranties of [Suffern] contained in any of the Loan Documents."

64. The said "opinion letter" was given, according to its terms, for the benefit of "participants in connection with the referenced transaction." Debtor was a participant in the "referenced transaction" to the extent that it was a purchaser and seller in the simultaneous chain through which Suffern acquired the Old Mill Road Property.

65. As such, the Debtor reasonably relied upon both (i) the oral statements of counsel during the September Conference Call, and (i) the Fleishman Opinion Letter in concluding that it was not violating any law or rule by agreeing to the transaction as structured by the Defendants.

66. In fact, the Fleishmann Opinion Letter was false when made, and known to both Fleischmann and CPIF to be false in many regards, including the following: (i) Suffern did not have the "full power, authority and legal right to execute [and] deliver" the loan documents (including the mortgage), because Suffern had acquired the Old Mill Road Property from a transferee who acquired the same improperly and illegally from the Debtor without Bankruptcy Court approval and, therefore, did not have good title to convey; (ii) consent, approval, or other authorization was required from this Court of the transaction because Suffern had acquired the Old Mill Road Property from an entity which acquired the same from the Debtor without disclosure to this Court; (iii) the execution and delivery of a security interest in property which belonged to the Debtor was in conflict with applicable law, because the same was conveyed for no consideration and with no Bankruptcy approval;" (iv) there was a proceeding pending in this Court which affected the [Old Mill Road] Property because the same was an asset of the Debtor; (v) no valid priority lien encumbering the Old Mill Road Property, an asset of the Debtor, could be given where no approval of this Court was obtained; and (vi) the conspirators were clearly

aware of matters contrary to the representations and warranties of Suffern contained in the loan agreement because they masterminded the sequence of events intended to circumvent the authority of this Court and divest the Debtor of its sole asset.

## AS AND FOR A FIRST COUNT
### [Avoidance of Unauthorized Post-Petition Transfer to RS Old Mills Rd LLC]
### [11 U.S.C. §549(a) and 11 U.S.C. §550(a)]
### [As against All Defendants]

67. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

68. Plaintiff is a Debtor-in-Possession and, with exceptions not applicable to the instant proceeding, has, pursuant to 11 U.S.C. § 1107, all the rights, powers, and shall perform all the functions and duties, of a trustee serving in a case under Chapter 11 of the Bankruptcy Code.

69. Plaintiff, exercising the powers of a trustee in the instant Chapter 11 case, may, pursuant to 11 U.S.C. § 549, avoid a transfer of property of the estate that is not authorized by Title 11 of the United States Code or by the Court.

70. Similarly, Plaintiff, exercising the powers of a trustee in the instant Chapter 11 case, may, pursuant to 11 U.S.C. § 550, recover, for the benefit of the estate, any estate property transferred, or, if the court so orders, the value of such property, from the initial transferee of such transfer or the entity for whose benefit such transfer was made, or any immediate or mediate transferee of such initial transferee, where such transferee is not a recipient for value, in good faith, and without knowledge of the voidability of the transfer avoided.

71. The collective purpose of §§ 549(a) and 550(a) of the Code is to õrestore the estate to the financial condition it would have enjoyed if the transfer had not occurred.ö

72. Pursuant to 11 U.S.C. § 541(a)(7), the commencement of a Chapter 11 case creates an estate comprised of, *inter alia*, õany interest in property that the estate acquires after the commencement of the case.ö

73. As set forth above, on July 13, 2017 this Court issued an Order authorizing the assumption by the Debtor of the Novartis-Debtor Contract of Sale. The Debtor closed on that contract and became the record owner of the Old Mill Road Property on September 6, 2017. Thus, the Old Mill Property became an asset of the Debtor's estate as of that date.

74. No application to the Court for permission to transfer that estate property was thereafter made to the Court, nor was such transfer authorized by the Court or the Bankruptcy Code.

75. On September 6, 2017, however, the Debtor, at the instruction of its transactional counsel, Defendant Landrigan (who was also secretly Bridgewater's counsel as well), and false Fleischmann Opinion Letter, executed and delivered a deed conveying the Old Mill Road Property to RS Old Mills Rd LLC for no consideration.

76. The transfer of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC was an unauthorized transfer because the same was not authorized by the Bankruptcy Code nor approved by the Court.

77. The transfer of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC constituted a depletion of the Debtor's estate.

78. Pursuant to 11 U.S.C. §549(a), the Debtor, exercising the powers of a Trustee, may avoid the transfer of the Old Mill Road Property (property belonging to the Debtor's estate) to RS Old Mills Rd LLC, and hereby declares its desire and request to do so.

79. Pursuant to 11 U.S.C. §550(a), the Debtor, exercising the powers of a Trustee, may recover the Old Mill Road Property from RS Old Mills Rd LLC, and hereby declares its desire and request to do so.

80.  The avoidance of the transfer of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC will restore the Debtor's estate to the financial condition it would have enjoyed if the voidable transfer had not occurred.

**AS AND FOR A SECOND COUNT**
**[Avoidance of Unauthorized Post-Petition Transfers to Suffern Partners LLC]**
**[11 U.S.C. §549(a) and 11 U.S.C. §550(a)]**
**[As against Defendant Suffern Partners LLC]**

81. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

82.  On September 6, 2017, RS Old Mills Rd LLC, at the instruction of its transactional counsel, Thomas Landrigan, and David Fleischmann, counsel to transferee Suffern Partners LLC, RS Old Mills Rd LLC executed and delivered a deed conveying the Old Mill Road Property to Suffern Partners LLC, purportedly for consideration of $30,000,000.00.

83.  The transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners LLC was an unauthorized transfer because the same was made from the Debtor's transferee to Suffern Partners without the approval by the Court.

84.  At the time of the transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners LLC, both RS Old Mills Rd LLC and Suffern Partners LLC, as well as their counsel, had actual knowledge (i) of the existence and pendency of the Debtor's Chapter 11 petition; (ii) that the Old Mill Road Property was property of the Debtor's estate; (iii) that the purported conveyance of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC was a post-petition transfer; (iv) that this Court had not approved the transfer of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC; (v) that the Bankruptcy Code did not authorize the transfer of the Debtor's sole asset absent Court approval; (vi) that the conveyance

of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC was without consideration; (vii) that, as such, the transfer of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC was an unauthorized post-petition transfer which was voidable; and (vii) consequently, the transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners (a mediate transferee of the same) was voidable and/or knew of facts that would lead a reasonable person to believe that the property transferred was recoverable.

85.  At the time of the transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners LLC, Suffern Partners LLC was not õa transferee for value in good faith and without knowledge of the voidability ofö the said transfer and the antecedent transfer from the Debtor to RS Old Mills Rd LLC.

86.  The transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners was an unauthorized transfer because the same re-conveyed property belonging other Debtorøs estate which was not authorized by the Bankruptcy Code nor approved by the Court.

87.  The transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners LLC constituted a depletion of the Debtorøs estate.

88.  Pursuant to 11 U.S.C. §549(a), the Debtor, exercising the powers of a Trustee, may avoid the transfer of the Old Mill Road Property (property constituting the Debtorøs estate) from RS Old Mills Rd LLC to Suffern Partners LLC, and hereby declares its desire and request to do so.

89.  Pursuant to 11 U.S.C. §550(a), the Debtor, exercising the powers of a Trustee, may recover the Old Mill Road Property from Suffern Partners LLC, and hereby declares its desire and request to do so.

90. The avoidance of the transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners LLC will restore the Debtor's estate to the financial condition it would have enjoyed if the voidable transfer had not occurred.

## AS AND FOR A THIRD COUNT
**[Avoidance of Fraudulent Conveyance to RS Old Mills Rd LLC]**
**[New York Debtor and Creditor Law, § 273]**
**[As against all Defendant]**

91. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

92. Section 273 of the New York Debtor and Creditor Law ["DCL"] provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

93. The conveyance of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC was made without fair consideration, indeed without consideration of any kind.

94. The transfer of the Old Mill Property by the Debtor rendered the Debtor insolvent.

95. Section 544 of the Bankruptcy Code permits a trustee (or, in this case, a debtor-in-possession) to avoid any transfer of property of the Debtor that would have been voidable by a creditor that extends credit to the debtor at the time of the commencement of the case, whether or not such a creditor exists. Here, such a creditor would have been able to avoid the transfer of the Old Mill Road Property pursuant to DCL §273.

96. As such, the conveyance of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC should be set aside as a fraudulent conveyance in violation of §273 of the DCL, made applicable to this case by § 544 of the Bankruptcy Code.

## AS AND FOR A FOURTH COUNT
### [Partial Avoidance of CPIF Mortgage on Old Mill Road Property]
### [11 U.S.C. §547]
### [As against CPIF Lending LLC]

97.   Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

98.   As set forth above, as part of the fraudulent scheme to divest the Debtor of the Old Mill Road Property, and as part-and-parcel of the voidable transfers of the Old Mill Property ultimately to Suffern, Suffern borrowed the sum of $22,000,000 from CPIF and granted to CPIF a mortgage in that amount on the Old Mill Road Property.

99.   CPIF caused that mortgage to be recorded on September 14, 2017 in the Rockland County Clerk's Office as Instrument No. 2017-00029397 on the Old Mill Road Property in the amount of $22,000,000.   On September 22, 2017, CPIF caused a certain Consolidation, Extension and Modification Agreement to be recorded in the Rockland County Clerk's Office as Instrument No. 2017-00030448, which increased the amount of the mortgage on the Old Mill Street Property to $33,000,000.00.

100.   As set forth above, the purchase price of the Old Mill Road Property for the Debtor's acquisition of the same from Novartis was $18,000,000.00.

101.   11 U.S.C. § 547 permits the avoidance of any obligation incurred by the Debtor which constitutes a lien on the Debtor's real property, except to the extent that the Debtor has received new value in exchange for the same.

102.   Approximately $15,500,000 of funds were provided by CPIF and used by the Debtor for the payment of the balance of the purchase price to acquire the Old Mill Road

Property from Novartis (the Debtor having previously tendered the sum of $2,500,000 as a down payment toward the $18,000,000 purchase price).

103.  Therefore, the sum of approximately $15,500,000 is new value to the Debtor and prevents the avoidance of an obligation in such amount by the Debtor to CPIF.

104.  However, the approximately $17,500,000 balance of the recorded mortgage lien on the Old Mill Road Property is avoidable pursuant to 11 U.S.C. § 547.

105.  Pursuant to 11 U.S.C. §547, the Debtor, exercising the powers of a Trustee, may avoid the obligation of the Debtor to CPIF to the extent of $17,500,000, and hereby declares its desire and request to do so.

### AS AND FOR A FIFTH, ALTERNATIVE, COUNT
### [Recovery of Value of Property]
### [11 U.S.C. §547]
### [As against Defendants Suffern, Goldie Reisman and Moses Reisman]

106. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

107.  11 U.S.C. § 550 permits, to the extent that a transfer is avoided under section 549 of the Bankruptcy Code, the recovery, for the benefit of the Debtor's estate, of the value of the property transferred from the initial transferee, any entity for whose benefit such transfer was made, or any immediate transferee of such initial transferee.

108.  As was set forth above, the Debtor acquired the Old Mill Road Property for a purchase price of $18,000,000.  The Old Mill Road Property was subsequently immediately transferred to Suffern, for the exclusive benefit of Defendant Goldie Reisman, for a purchase price of $30,000,000, thus establishing the value of the Old Mill Road Property to the Debtor at $12,000,000.

109.  Suffern, Goldie Reisman and Moses Reisman were the intended beneficiaries of the transfer of the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC, because, as set forth above, they intended to immediately transfer the same to Suffern, an entity owned by Defendant Goldie Reisman and controlled by Defendant Moses Reisman.

110.  Suffern and the Reismans were the intended beneficiaries of the transfer of the Old Mill Road Property from RS Old Mills Rd LLC to Suffern because Suffern would be the record owner the Old Mill Road Property and Goldie Reisman would be the sole owner of Suffern.

111.  As such, and in the event that the conveyance of the Old Mill Street Property from the Debtor to RS Old Mills Rd LLC, and the subsequent conveyance of the same to Suffern is avoided, and recovery of the transferred property is impossible or impracticable, the value of the Old Mill Street Property at the time of the conveyances, *to wit* $12,000,000, plus the Debtor's $2,500,000 down payment, should be ordered by the Court to be paid to the Debtor's estate by Suffern and Reisman.

## AS AND FOR A SIXTH COUNT
**[Fraud in the Inducement]**
**[New York Common Law]**
**[As against Defendants Suffern, Goldie Reisman, Moses Reisman, Fleischmann, Bridgewater, Genuth and Landrigan]**

112.  Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

113.  As set forth above, in July or August of 2016, the Conspirators (by Thomas Landrigan, David Fleishmann, and counsel for CPIF) orally represented to the Debtor that its conveyance of the Old Mill Property to Entity 2 (which was later formed as RS Old Mills Rd

LLC), and the subsequent simultaneous transfer of the same to Entity 3 (which was later formed as Suffern Partners LLC), was lawful and required no Bankruptcy Court approval.

114.  The said representations were false when made, known by Thomas Landrigan, David Fleishmann, and counsel for CPIF to be false, and made for the sole purpose of inducing the Debtor to convey the Old Mill Road Property to RS Old Mills Rd LLC.

115.  As was also set forth above, on or about September 6, 2017, the Conspirators represented to the Debtor in writing (by way of an õopinion letterö from David Fleischmann and a õtitle policyö) that the Debtorøs conveyance of the Old Mill Property to RS Old Mills Rd LLC, and the subsequent, simultaneous conveyance of the same to Suffern Partners, was lawful and required no Bankruptcy Court approval.

116.  The said representations were false when made, known by David Fleischmann and Commonwealth Title to be false, and made for the sole purpose of inducing the Debtor to convey the Old Mill Road Property to RS Old Mills Rd LLC.

117.  As further set forth above, in July or August of 2016, and at numerous times thereafter, the Conspirators (by Thomas Landrigan, Stephen Freidman, David Fleishmann, Moses Reisman, Isaac Genuth and Mark Yunger) represented to the Debtor that they intended the Debtor to, and that the Debtor (or its assignee) would, receive a majority, 65% equity interest in Suffern Partners LLC.

118.  The said representations were false when made, and known by Thomas Landrigan, Stephen Freidman, David Fleishmann, Moses Reisman, Isaac Genuth and Mark Yunger to be false, and made for the sole purpose of inducing the Debtor to convey the Old Mill Road Property to RS Old Mills Rd LLC.

119.   The Debtor reasonably relied upon the aforesaid representations to its detriment in that, in reliance on the same, the Debtor transferred the Old Mill Road Property to RS Old Mills Rd LLC for no consideration.

120.   As a result of the fraudulent inducement described above, the deed conveying the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC is voidable, and the Debtor hereby elects to avoid the said deed.

### AS AND FOR A SEVENTH COUNT
**[Conversion]**
**[New York Common Law]**
**[As against Defendants Suffern, Goldie Reisman and Moses Reisman]**

121.   Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

122.   As set forth above, the Debtor had possession and ownership of the Old Mill Road Property.

123.   Defendants Suffern Partners, Goldie Reisman and Moses Reisman exercised an unauthorized dominion over the Old Mill Road Property, to the alteration of its condition and to the exclusion of the Debtor's rights therein.

124.   As a result of the conversion of the Old Mill Road Property by the said Defendants, the Debtor has been unable to resell, lease or develop the said property.

125.   As a result of the conversion of the Old Mill Road Property by Suffern, Goldie Reisman and Moses Reisman, the Debtor has been damaged in an amount to be proven at trial, but which amount is believed to exceed One Hundred Million Dollars ($100,000,000.00).

126.   Additionally, the actions of Suffern and Moses Reisman were so gross, wanton, malicious and willful, and there was such fraud and other morally culpable conduct on their part

that punitive or exemplary damages, in an amount deemed appropriate by the trier of fact, should be awarded against them as punishment and so as to discourage others, who might be so prompted, from engaging is similar conduct in the future.

### AS AND FOR AN EIGHTH COUNT
**[Civil Conspiracy to Convert Property]**
**[New York Common Law]**
**[As against Defendants Fleischmann,**
**Bridgewater, Genuth, Yunger and Landrigan]**

127. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

128. As set forth above, Defendants Suffern, Goldie Reisman and Moses Reisman successfully converted the Old Mill Road Property from the Debtor to their own use.

129. As also set forth above, Defendants Fleischmann, Bridgewater, Genuth, and Landrigan entered into an agreed upon plan and scheme with Defendants Suffern and Moses Reisman to accomplish the said conversion.

130. The Defendants engaged in many overt acts in furtherance of the conspiracy, including (without limitation) (i) false oral representations by Fleischman and Landrigan that the conveyance by the Debtor of the Old Mill Road Property for no consideration and without Bankruptcy Court approval was lawful; (ii) the false written representation by Fleischmann that that the conveyance by the Debtor of the Old Mill Road Property for no consideration without Bankruptcy Court approval, and the subsequent conveyance of the said property by RS Old Mills Rd LLC to Suffern was lawful; (iii) the false representations by Moses Reisman, Fleischmann, Genuth and Yunger that the Defendants intended that the Debtor receive, and that the Debtor (or its assignee) in fact would receive, a majority interest in Suffern; (iv) the formation of RS Old

Mills Rd by Landrigan; (v) the formation of Suffern Partners by Fleischmann; (iv) the preparation of a deed by Landrigan conveying the Old Mill Road Property from the Debtor to RS Old Mills Rd LLC; (v) the direction by Defendant Landrigan that the Debtor execute the deed conveying the RS Old Mill Road Property to RS Old Mills Rd LLC; (vi) the creation by Landrigan of a deed conveying the Old Mill Road Property from RS Old Mills Rd LLC to Suffern Partners; (vii) the direction by Landrigan that RS Old Mills Rd LLC execute the deed conveying the RS Old Mill Road Property to Suffern; and (viii) the creation of a false õopinion letterö by Fleischmann, among others.

131.  Defendants Fleischmann, Bridgewater, Genuth, Yunger and Landrigan intentionally participated in the manners set forth above in furtherance of the plan and its purpose.

132.  As a result of the civil conspiracy to complete the conversion by the Defendants of the Debtorøs property, as above-described, the Debtor has been damaged in an amount to be proven at trial, but which amount is believed to exceed One Hundred Million Dollars ($100,000,000.00).

133.  Additionally, the actions of the Defendants were so gross, wanton, malicious and willful, and there was such fraud and other morally culpable conduct on their part, that punitive or exemplary damages, in an amount deemed appropriate by the trier of fact, should be awarded against them as punishment and so as to discourage others, who might be so prompted, from engaging is similar conduct in the future.

## AS AND FOR A NINTH COUNT
**[Conspiracy to Defraud Bankruptcy Court and Creditors]**
**[New York Common Law]**
**[As against all Defendants]**

134. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

135.  As set forth above, Defendants entered into an agreed upon plan and scheme to defraud the Bankruptcy Court by causing the Debtor to surreptitiously divest itself of its sole asset for no consideration, and to thereafter conceal from the Bankruptcy Court and creditors that the Debtor's sole asset had been transferred for no consideration and without the knowledge or approval of the Bankruptcy Court.

136.  The intended, and actual, victim of the Defendants' fraudulent scheme to defraud the Bankruptcy Court are the Debtor and its creditors.

137.  Had the Defendants properly sought Bankruptcy approval for the conveyance of the Debtor's sole asset for no consideration, or disclosed to the Bankruptcy Court that they intended to cause the Debtor to convey its sole asset for no consideration, the Court would undoubtedly not have permitted such transfer and the Debtor would have either (i) not lost its ownership of the Old Mill Road Property, or (ii) at the very least received the sum of $12 million for the subsequent conveyance of the Old Mill Street Property to Suffern Partners.

138.  Additionally, the actions of Suffern and Moses Reisman were so gross, wanton, malicious and willful, and there was such fraud and other morally culpable conduct on their part that punitive or exemplary damages, in an amount deemed appropriate by the trier of fact, should be awarded against them as punishment and so as to discourage others, who might be so prompted, from engaging is similar conduct in the future.

### AS AND FOR A TENTH COUNT
**[Legal Malpractice]**
**[New York Common Law]**
**[As against Defendant Fleischmann]**

139. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

140.  The Fleischmann Opinion Letter specifically stated on its face that the same was drafted and delivered for the benefit of öparticipants in connection with the referenced [sale of the Old Mill Road Property] transaction.ö   Debtor was a participant in the öreferenced transactionö to the extent that it was a purchaser and seller in the simultaneous chain through which Suffern acquired the Old Mill Road Property.

141.  As such, Defendant Fleischmann had a duty of care to the Debtor.

142.   The Fleischmann Opinion Letter erroneously represented that the series of transactions regarding the Old Mill Road Street Property ó its conveyance from the Debtor to RS Old Mills Rd LLC, and then to Suffern Partners ó was lawful and did not require the approval or consent of the Bankruptcy Court.

143.  By making such an erroneous representation, Fleischmann failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and, thereby, violated his duty of care to the Debtor.

144.  The breach by Fleischmann of that duty of care proximately caused the Debtor to sustain actual and ascertainable damages in that, in reliance upon Fleischmannøs erroneous conclusion, the Debtor conveyed its sole asset without consideration and without Bankruptcy Court approval, which approval would have been sought were it not for the Freidman Opinion Letter.

145.  As a result of the breach of that duty of care by Fleischmann, the Debtor was damaged to the extent that it either (i) lost its ownership of the Old Mill Road Property, or (ii) at the very least failed to receive the sum of $12 million for the subsequent conveyance of the Old Mill Street Property to Suffern Partners.

**AS AND FOR AN ELEVENTH COUNT**
**[Breach of Contract]**
**[New York Common Law]**
**[As against Defendant Bridgewater]**

146. Plaintiff repeats, reiterates and realleges, and hereby incorporates, each and every allegation heretofore set forth herein, with the same force and effect as though more fully set forth herein at length.

147.  As was set forth above, on or about November 28, 2016, the Debtor entered into the Bridgewater Agreement with Bridgewater which provided, *inter alia*, that Bridgewater would obtain (from an outside source), or itself provide, a loan in the amount of $18,000,000.00 to Debtor as financing for the acquisition of the Old Mill Road Property.

148.  Bridgewater breached the Bridgewater Agreement in that it failed to obtain a loan for the Debtor in the amount of $18,000,000.00 to financing for the acquisition of the Old Mill Road Property, instead obtaining financing for another entity to whom the Debtor was required to convey away the Old Mill Road Property.

149.  The Bridgewater Agreement further provided that Bridgewater would, at its own expense, (i) obtain all necessary permits, approvals and the like regarding the development, sale, lease or joint venturing of the Old Mill Road Property, or portions thereof (the ōProjectö); (ii) employ all necessary architects, engineers, designers, expediters and other service providers to advance and conclude the Project; (iii) market and promote the Project; and (iv) perform other services necessary to further the Project.

150.   Bridgewater breached the Bridgewater Agreement by (i) failing to even attempt to obtain any permits or approvals, (ii) failed to employ any architects, engineers, designers, expediters and other service providers; (iii) failed to market and promote the Project; and (iv) failed to perform any necessary services to further the Project.

151.   As a result of Bridgewater's breach of contract, the Debtor was caused to, and did, suffer damages in an amount to be proven at trial, but which amount is believed to be at least One Hundred Million Dollars ($100,000,000.00).

**WHEREFORE**, Plaintiff Respectfully Requests Judgment as follows:

1.   On the First Count, as against all Defendant, an Order avoiding the unauthorized post-petition conveyance of the Old Mill Road Property from the Debtor to RS Old Mills Rd. LLC, and directing the Rockland County Clerk to strike the same as of record;

2.   On the Second Count, as against Defendant Suffern Partners LLC, an Order avoiding the unauthorized post-petition conveyance of the Old Mill Road Property from RS Old Mils Rd. LLC to Suffern Partners LLC, and directing the Rockland County Clerk to strike the same as of record;

3.   On the Third Count, as against all Defendants, an Order avoiding the unauthorized post-petition conveyance of the Old Mill Road Property from the Debtor to RS Old Mils Rd. LLC, and directing the Rockland County Clerk to strike the same as of record;

4.   On the Fourth Count, as against Defendant CPIF Lending LLC, an Order partially avoiding the mortgage on the Old Mill Road Property held by CPIF to the extent of any amount claimed to be due and owing on the said mortgage in excess of

approximately $15,500,000, and directing the Rockland County Clerk to reduce the same to such amount as of record;

5. On the Fifth, alternative, Count, as against Defendants Suffern, Goldie Reisman and Moses Reisman, a monetary Judgment, jointly and severally, in the amount of $12,000,000, together with pre-Judgment interest thereupon;

6. On the Sixth Count, as against Defendant Suffern, Reisman, Fleischmann, Bridgewater, Genuth and Landrigan, declaring the deed from the Debtor to RS Old Mills Rd LLC to be null, void and of no legal force or effect, directing the Rockland County Clerk to strike the same as of record, and awarding the Debtor its legal fees against the named Defendants jointly and severally;

7. On the Seventh Count, as against Defendants Suffern, Goldie Reisman and Moses Reisman, jointly and severally, a monetary Judgment in an amount to be proven at trial, but which amount is believed to exceed One Hundred Million Dollars ($100,000,000.00), together with pre-Judgment interest thereupon, punitive damages in such amount as the trier of fact may deem appropriate, and the Debtor's reasonable counsel fees;

8. On the Eighth Count, as against Defendants Fleischmann, Bridgewater, Genuth, Yunger and Landrigan, jointly and severally, a monetary Judgment in an amount to be proven at trial, but which amount is believed to exceed One Hundred Million Dollars ($100,000,000.00), together with pre-Judgment interest thereupon, punitive damages in such amount as the trier of fact may deem appropriate, and the Debtor's reasonable counsel fees;

9.  On the Ninth Count, as against all Defendants, jointly and severally, a monetary Judgment in the amount of Twelve Million Dollars ($12,000,000.00), together with pre-Judgment interest thereupon, punitive damages in such amount as the trier of fact may deem appropriate, and the Debtor's reasonable counsel fees

10. On the Tenth Count, as against Defendant Fleischmann, a monetary Judgment in the amount of Twelve Million Dollars ($12,000,000.00), together with pre-Judgment interest thereupon;

11. On the Eleventh Count, as against Defendant Bridgewater, in an amount to be proven at trial, but which amount is believed to be at least One Hundred Million Dollars ($100,000,000.00).

12. On all Counts, the costs and taxable disbursements of this action, together with such other, further and different legal or equitable relief as the Court may deem appropriate.

Dated: March 29, 2018

Goldberg Weprin Finkel Goldstein LLP

By: /s/ Kevin J. Nash, Esq.
*Attorneys for Debtor/Plaintiff*
1501 Broadway, 22nd Floor
New York, New York 10036
Phone: (212) 221-5700

Levine & Associates, P.C.

By: /s/ Michael Levine, Esq.
*Special Litigation Counsel to the Debtor/Plaintiff*
15 Barclay Road
Scarsdale, NY  10583
(914) 600-4288