**David K. Fiveson, Esq.** (dfiveson@bffmlaw.com)
**Mark J. Krueger, Esq.** (mkrueger@bffmlaw.com)
**BUTLER, FITZGERALD, FIVESON & McCARTHY,**
**A Professional Corporation**
*Attorneys for Defendant CPIF Lending, LLC*
9 East 45th Street, Ninth Floor
New York, New York 10017
(212) 615-2200

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
In re:

RS OLD MILL, LLC,

                            Debtor
---------------------------------------------------------------X
RS OLD MILL, LLC,

                            Plaintiff,

                -against-

SUFFERN PARTNERS, LLC, BRIDGEWATER
CAPITAL PARTNERS, LLC, ISAAC GENUTH, MARK
YUNGER a/k/a "MARK JUNGER", GOLDIE REISMAN,
MOSE REICHMAN, RS OLD MILLS RD LLC, DAVID
FLEISCHMAN, THOMAS LANDRIGAN and CPIF
LENDING, LLC,

                            Defendants.
---------------------------------------------------------------X

Case No. 17-22218 (RDD)

Chapter 11

Adversary No.
19-8243 (RDD)

Hearing Date:
May 24, 2019 10:00 a.m.

## MOTION TO DISMISS ADVERSARY PROCEEDING

TO THE HONORABLE ROBERT D. DRAIN

UNITED STATES BANKRUPTCY JUDGE:

       CPIF Lending, LLC ("CPIF"), a defendant in Debtor's adversary proceeding, by its counsel, Butler, Fitzgerald, Fiveson & McCarthy, PC, respectfully submits this motion

pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure which incorporates Fed. R. Civ. P. 12(b)(6) to dismiss counts one, two, three, four and nine of this adversary proceeding against CPIF. In support of this motion CPIF relies on the Declaration of David K. Fiveson, Esq. attorney for CPIF and the exhibits annexed thereto.

## PRELIMINARY STATEMENT

1    As shall be set forth herein, the adversary complaint as against CPIF fails as a matter of law for several reasons. Firstly, to the extent the Debtor seeks to set aside various transfers due to its failure to obtain prior Court approval of a sale, it is the Debtor that admittedly failed to obtain such approval, and instead sought to dismiss the bankruptcy on the basis all creditors had been paid. No creditor has been impaired. Rather, the Debtor appears to be using this litigation to attempt to resolve a dispute with its counsel and/or partners unrelated to CPIF's loan, which was indisputably made in good faith and for value. The Debtor should not benefit, to CPIF's detriment, from the Debtor's own failing.

2    Secondly, there is no viable claim for a fraudulent conveyance or a preference. CPIF gave fair value ($33,000,000) for its mortgage interest; the complained-of transfers were all post-petition; there are no "triggering creditors" claiming a fraudulent conveyance; and those claims would be time-barred in any event.

3    Lastly, to the extent that the complaint raises claims based in fraud or conspiracy to commit fraud (count nine), the Debtor does not set forth any misrepresentation made by CPIF (let alone with particularity) and there is no recognizable claim under New York law for conspiracy to commit a fraud.

4    Succinctly, the Debtor filed this Chapter 11 purportedly to preserve its contract rights to purchase property located in Rockland County ("Novartis Property") formerly owned by the Novartis Corporation ("Novartis") pursuant to a sale agreement between Debtor

2

and Novartis dated November 28, 2016. Novartis was threatening to declare the Debtor in default and retain the $2.5 million deposit.

5       However, on November 29, 2019, well in advance of filing its Chapter 11 proceeding on February 13, 2017, the Debtor had assigned its rights in the sale agreement to a shell entity known as RS Old Mills Rd LLC ("Old Mills Rd"). This fact was never disclosed to the Court and is still not disclosed in the adversary complaint. Accordingly, the alleged sole asset of Debtor (Novartis Sale Agreement) was already under contract by Debtor to be transferred to a shell company (controlled by debtor's family) at the time it filed its Chapter 11 filing. Old Mill Rd, the shell company, which had no direct contract with Novartis, could not stay the default declaration by Novartis with a bankruptcy filing. Moreover, it appears that assignment within one day of execution of the Novartis Sale Agreement was prohibited by its terms. The Debtor also concealed from the Court its conveyance of title to the Novartis Property, which the Debtor purportedly purchased for consideration of $18 million, to its shell company Old Mills Rd on September 5, 2017, post-petition.

6       CPIF, on the other hand, is a bona fide encumbrancer for value. There is no question CPIF lent $33,000,000 to Suffern Partners, LLC ("Suffern") to allow Suffern to purchase the Novartis Property, and in return received a mortgage secured by the Novartis Property (and two parcels of property in Kings County). All of CPIF's loan proceeds are accounted for: $15.5 million of those loan proceeds were delivered for the **Debtor's purchase** of the Novartis Property, as the Debtor concedes in paragraph 102 of the complaint, and an additional $13,763,840 was paid from loan proceeds to Debtor's counsel, defendant Thomas Landrigan, presumably to pay all creditors in full (although the Debtor fails to disclose that fact). Indeed, in November 2017, Debtor's counsel submitted a Notice of Proposed Order Dismissing

3

Chapter 11 Case with consent of the creditors. As such, CPIF gave fair value for its mortgage and the Debtor cannot now seek to avoid it.

## FACTS CONCERNING THE NOVARTIS PROPERTY

7. On or about November 28, 2016, Debtor entered into a sale agreement with Novartis to purchase the Novartis Property ("Novartis Sale Agreement"), making a $2.5 million deposit. A copy of the Novartis Sale Agreement is annexed as Exhibit A. On the next day the Debtor assigned all of its rights in the Novartis Sale Agreement to a shell company, Old Mills Rd. A copy of that assignment is annexed as Exhibit B. That agreement is signed by Mr. Salamon and Avroham Kaufman, believed to be Mr. Salamon's relative.

8. Accordingly, when Debtor filed this petition on February 13, 2017 to stay Novartis's declaration of a default under the Novartis Sale Agreement, the Debtor had assigned its interest in the Novartis Sale Agreement. This fact was not disclosed to this Court. A copy of the Debtor's bankruptcy petition is annexed as Exhibit C. It has also not been disclosed in the adversary complaint in this action. Moreover, under paragraph 12.2 of the Novartis Sales Agreement, the contract was not assignable until after a due diligence period expired.

9. On February 13, 2017 Debtor filed a Chapter 11 petition in this Court. (See, Compl. ¶¶ 4, 23) At the time, and according to Debtor, its only asset was a contract to purchase the Novartis Property. However, as set forth above, Debtor had already assigned its rights in this contract. (See, Exhibit B). Notably, it was the February 13, 2017 filing which stayed Novartis's efforts to declare the Debtor in default of the Novartis Sale Agreement and retain the $2.5 million deposit. Old Mill Rd, to which the Novartis Sales Agreement had been assigned in violation of the Agreement, was not a party to the Sales Agreement and therefore could not obtain such relief by a bankruptcy filing.

4

    10  On July 13, 2017 this Court authorized the Debtor to assume the Novartis Sale Agreement. (See, Compl. ¶¶ 4, 43). Although the Debtor had given Novartis a $2.5 million deposit, the Debtor required financing to fund the balance of the $18 million purchase price. (See, Compl. ¶¶ 3, 36). According to the Debtor, a telephone call occurred "[i]n July or August of 2017" involving the Debtor's real estate counsel, principals of Bridgewater Capital Partners, which was party to a financing agreement with the Debtor, counsel to Suffern, counsel to CPIF, counsel to a title insurance company, "other attorneys," and "a consultant to the Debtor." (See, Compl. ¶¶ 45, 3). During that call, counsel for CPIF allegedly stated that it would not lend funds to the Debtor because, among other things, "the Debtor had not obtained Bankruptcy Court approval for any such financing." (See, Compl. ¶ 46). Counsel to CPIF also allegedly rejected a proposal to loan funds to an entity to whom the Debtor would transfer the Novartis Property because "the conveyance from the Debtor to another entity would require the approval of the Bankruptcy Court." Id. Allegedly, however, the parties "then advanced the concept" that CPIF would make a loan to a third entity, to whom the Novartis Property would be subsequently transferred; *i.e.*, if the Debtor transferred the Novartis Property to Entity 2, and Entity 2 transferred it to Entity 3, then CPIF would make a loan to Entity 3 secured by the Novartis Property. Id.

    11  These allegations, however, are belied by the facts that the Novartis Sale Agreement had been assigned on November 29, 2016 to Old Mill Rd, and that Old Mill Rd had contracted to sell the Novartis Premises to Suffern on December 16, 2016. (Exhibit D).

    12  On or about September 1, 2017 the sale of the Novartis Property closed and Novartis granted a deed to Debtor. The total paid for the Premises was $18 million. The purchase monies consisted of the Debtor's $2.5 million deposit and $15.5 million loaned by

5

CPIF to Suffern, but paid to Novartis as consideration for the deed to the Debtor. Thereafter on September 5, 2017 the Debtor transferred the Premises to Old Mills Rd for no consideration. Old Mills Rd in turn flipped the Novartis Property on September 5, 2017 to Suffern for $30 million. Copies of the recorded deeds evidencing the purchase and "flip" are annexed as Exhibit E. The Debtor claims it was to apply the $12 million profit to pay creditors. The Debtor does not disclose if it was to repay the $15,940,321 in purchase monies that were paid by CPIF's loan proceeds to Novartis to acquire title. The Debtor does not disclose that an added $13,762,840 was paid from the loan proceeds to Mr. Landrigan for the creditors.

13.    In connection with the transfer of the Novartis Property from Old Mills Rd to Suffern, CPIF made a $33,000,000 loan and took back a mortgage in that amount secured by the Novartis Property (and two properties located in Kings County). A copy of CPIF's mortgage is annexed as Exhibit F.

14    At least $29,704,000 of CPIF's loan proceeds were disbursed to the benefit of the Debtor. A copy of the closing statement showing the disbursement of CPIF's loan proceeds is annexed as Exhibit G. As the Court will note, $15,940,321.51 was paid to Commonwealth Land Title Insurance Company for the benefit of Novartis as part of the Debtor's $18 million purchase monies. An additional $13,763,840.88 of the loan proceeds were paid to Debtor's counsel Cohen, LaBarbera & Landrigan, LLP (presumably to pay creditors). (See, Exhibit G); (see, also, Compl. ¶¶ 102). Mr. Landrigan wrote this Court on August 16, 2017 as closing counsel for the Debtor. See Exhibit H. The Court will also note that the Debtor scheduled all creditor's claims as totaling $10,269,323 in its amended schedules filed October 3, 2017. See Exhibit I.

6

15    By virtue of the foregoing, CPIF is a bona fide encumbrancer for value. Fair value was given for its mortgage thereby negating any claims to a fraudulent transfer. Moreover, but for $15,940,321 of CPIF's loan proceeds, the Debtor never could have purchased the Novartis Property.

16    It appears the gravamen of the Debtor's complaint is that Debtor's counsel did not distribute to the Debtor the balance of the $13,763,840 loan proceeds after payment of creditors. However, this is not a basis for a fraudulent conveyance claim against CPIF. In addition, any claim the creditors were not paid is contradicted by the proposed order to dismiss the Chapter 11, on consent of the creditors, submitted by Debtor's counsel in November 2017. (Exhibit J).

## PLEADING STANDARD

17    Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, which incorporates Federal Rule of Civil Procedure 12(b)(6), permits a bankruptcy court to dismiss an adversary complaint that fails to state a claim upon which relief may be granted. Ashcroft v. Iqbal, 556 U.S. 6762, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); E.E.O.C. v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000). The factual allegations in a complaint must be supported by more than mere conclusory statements. Twombly, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556).

18    Rule 7009 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 9(b) of the Federal Rules of Civil Procedure, imposes the additional requirement that allegations of fraud must be stated "with particularity." "[I]n order to comply

7

with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

19    Where the pleadings refer to agreements and other documents, it is proper for the Court to consider the documents a part of the Complaint in ruling on motions to dismiss. Grant v. County of Erie, 542 Fed. Appx. 21, 23 (2d Cir. 2013). If an allegation is belied by the terms of the documents, the documents are controlling. Alexander v. Board of Education of City of New York, No. 15-1959, 2016 WL 2610009 (2d Cir. May 6, 2016).

**POINT ONE**

**NO CREDITORS HAVE BEEN IMPAIRED. THE DEBTOR
SHOULD NOT BE PERMITTED TO RESCIND AND
BENEFIT BY HIS WRONGFUL ACTS.
(COUNTS ONE THROUGH FOUR).**

20    The Debtor argues that since prior Court approval was not obtained for its transfer of the Novartis Property to Old Mills Rd, that transfer should be avoided.

21    The Debtor conveniently leaves out the fact that the Debtor made the post-petition transfer of the Novartis Property to Old Mills Rd without obtaining this Court's approval. The Debtor does not claim any creditor was impaired. Indeed, the Debtor sought to dismiss this bankruptcy on November 13, 2017 (Exhibit J), based on payment of all creditors' claims at the closing on September 6, 2017. It seems axiomatic that Debtor should not benefit from its own intentional acts by converting a purported claim against his counsel for accounting of surplus funds, to a claim against the lender providing the funds.

22    CPIF advanced $15,940,000 as loan proceeds to Suffern as part of the purchase price of the Novartis Property. Without CPIF's loan proceeds, the Debtor would not

8

have purchased the Premises. Also, $13,763,840 of CPIF's loan proceeds was paid to the Debtor's counsel at closing, a sum sufficient to pay all creditors in full. Indeed, it appears all the creditors were paid in full.

23      In sum, a total of $29,704,000 was paid by CPIF for the benefit of the Debtor with the Debtor's knowledge and approval. These monies, part of the total $33 million loan proceeds, were secured by mortgages on the Novartis Property and two Kings County properties. *Nunc pro tunc* approval of the transfers, as requested by Suffern in its motion, should be granted in that the transfers were a benefit to the Debtor's estate.

## POINT II

### DEBTOR'S CLAIM FOR AVOIDANCE OF FRAUDULENT CONVEYANCES PURSUANT TO 11 U.S.C §544 AND NEW YORK LAW FAIL AS A MATTER OF LAW (COUNTS ONE THROUGH THREE).

24      Debtor's claims based upon an alleged fraudulent conveyance fail for several reasons. First, CPIF clearly paid fair value for its mortgage. Second, 11 U.S.C. §544 applies to pre-petition transfer and here, the transfers were post-petition. Third, there are no "triggering creditors" making claims of a fraudulent conveyance. Finally, any claims hereunder are barred by the statute of limitations.

A.    **CPIF Gave Fair Value For Its Mortgage**

25      It is well settled that a fraudulent conveyance requires a finding that fair consideration was not paid. Here, that basic premise is not met. It is undisputed that CPIF lent $33,000,000 in connection with the transfers Debtor seeks to set aside. Net proceeds in the amount of $13,763,840 were paid directly to Debtor's counsel, which apparently paid all creditors. Another $15,940,000 of the loan proceeds were paid as the bulk of the purchase monies for the Novartis Property. Given these facts, is preposterous to suggest that CPIF did not

9

give fair value for its mortgage. See, Debtor and Creditor Law §273. See, also, In re Ames Dept. Stores, Inc., 161 B.R. 87 (Bankr. SDNY 1993)(elements for fraudulent conveyance under New York State law same as those under Bankruptcy Code).

26. By virtue of the foregoing, the Debtor has not - nor cannot - establish that: (i) CPIF did not give fair consideration for its mortgage interest; or (ii) the Debtor did not receive fair value for its interest. For this reason alone, any claims to a fraudulent conveyance fail. See, United States v. McCombs, 30 F.3d 310 ($2^d$ Cir. 1994)(burden on party challenging conveyance to show lack of fair consideration).

**B.    There Were No Pre-Petition Transfers**

27    The powers granted by section 544 of the Bankruptcy Code "are limited by their terms to avoidance of **pre-petition** transfers and may not be used . . . to avoid post-petition transfers." 5 Collier on Bankruptcy ¶ 544.01, at 544-5 (Levin & Sommer eds., 16th ed.)(*emphasis added*). Consequently, where the only alleged transaction occurred post-petition, this Court has dismissed claims brought under section 544 and state fraudulent conveyance law. See, Hirsch v. Pa. Textile Corp. (In re Centennial Textiles, Inc.), 227 B.R. 606, 610 (Bankr. SDNY 1998); Eisenberg v. Bank of N.Y. (In re Sattler's, Inc.), 73 B.R. 780, 790-91 (Bankr. SDNY 1987).

28    Although "a literal reading of Section 544(b) might seem to permit its use to avoid postpetition transfers," this Court has made clear that "such an interpretation of the statute is inappropriate." In re Sattler's, 73 B.R. at 790. Courts around the country have followed suit. For example, the United States District Court for the Central District of California recently reversed a bankruptcy court's ruling that Section 544 could be used to avoid postpetition transfers, finding that "statutory construction, contents in which § 544 appears in the Bankruptcy code, and legislative history" – coupled with substantial case law precedent – all compelled the

10

conclusion that Section 544 can be used to avoid prepetition transfers only. Casey v. Rotenberg (In re Kenny G. Enters., LLC), 512 B.R. 628, 633-38 (C.D. Cal. 2014). First, the court noted that Section 544 allows avoidance of any transfer of property "of the debtor," which can "only potentially apply to transfers that occur either pre-petition or post-confirmation," because in the interim, "the debtor's property…transmutes into 'property of the estate.'" Id. at 633 (emphasis added). Second, "[t]he fact that Congress specifically included a section dealing with post-petition transactions [section 549] suggests that it solely intended for that section to govern transfers occurring after the filing of a bankruptcy petition." And "t]he fact that Congress used such sweeping language [in section 549] demonstrates that Congress envisioned § 549 as the sole tool for avoiding post-petition transfers." Id. at 635. Third, relying on this Court's decision in In re Sattler's, the court found that it would make "little sense" for section 544 to apply to post-petition transactions because section 544 is governed by the statute of limitations found in section 546, which runs from the appointment of the trustee (rather than the date of transfer). Id. at 636. Finally, the court found that "the legislative history relating to § 549 reveals that Congress recognized that section as solely governing the province of post-petition transfers." Id.

29    Numerous other courts have similarly held that Section 544 is available to avoid pre-petition transfers only and, as such, have dismissed claims seeking to use Section 544 to avoid post-petition transactions. See, e.g., Rieser v. Dimsmore & Shohl, LLP (in re Troutman Enters., Inc.), 2007 WL 205640, at *9-10 (6th Cir. B.A.P. Jan. 26, 2007) (affirming dismissal of claim to avoid post-petition transfers under Section 544 "because § 544 applies only to pre-petition transfers of property"); Audette v. Kasemire (In re Concepts Am., Inc.), 2018 WL 3019629, at *6-7 (Bankr. N.D. Ill. June 14, 2018) ("Since all of the …Transfers made to [defendants] were mad post-petition, the Trustee cannot state a claim against them for avoidance

11

of fraudulent transfers." (citing In re Sattler's, 73 B.R. at 790-71)). Indeed, "[a] clear majority of courts have interpreted the language in § 544 as applying only to pre-petition transfers of property," often citing to the continuing force of this Court's seminal decision in In re Sattler's. In re Troutman Enters., 2007 WL 205640, at *9; see id.

30    Here, the only transfers that the Debtor seeks to avoid occurred post-petition.  Compl. ¶¶ 96, 4, 59). The Debtor does not allege a single pre-petition transfer. Accordingly, the Complaint fails to allege an essential element of a claim under Section 544 and thus fails as a matter of law.

## C.    There Are No "Triggering Creditors"

31·    Also worth noting is that the claim for the alleged fraudulent conveyance is not being made by any creditor to the estate, but by the Debtor. Indeed, not a single creditor has alleged that any conveyances, let alone CPIF's mortgage, were fraudulent. The Debtor previously sought dismissal of this bankruptcy based on full payment to all creditors. See Exhibit __.

32    In order for Section 544 to apply, there must be a triggering creditor. The trustee is required to show both: (i) an actual creditor as to whom the transfer is voidable under applicable law; and (ii) that the creditor holds an unsecured claim that is allowable under Section 502. In re Allou Distributors, Inc. 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008). The trustee's standing is "completely derivative of that of an actual unsecured creditor and depends on his alleging and proving that an actual creditor exists that satisfies both requirements." Id. (citing In re Wingspread Corp., 178 B.R.938, 945 (Bankr. S.D.N.Y. 1995)). Section 101 of the Bankruptcy Code defines "creditor" as an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Here there is no creditor alleging that the transfers were voidable. Rather, it the Debtor/transferee making these claims.

12

33   As set forth above, this transaction was not fraudulent as to the creditors of the Debtor; rather, CPIF enriched the estate with its loan. CPIF's mortgage was granted for fair consideration, the net proceeds of which that were delivered to Debtor's counsel were sufficient to pay all creditors. Columbia Realty Venture v. D.C., 433 A.2d 1075, 1077 (D.C. 1981). So, unless the Debtor's creditors were affected, which they were not, it is not a fraudulent conveyance claim. Eberhard v. Marcu, 530 F.2d 122, 131 (2d Cir. 2008); Silverman v. Sound Around, Inc. (In re Allou Distribs.), 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008) (to establishing standing under Section 544, a trustee must identify a "triggering creditor" which could have avoided transfer as of the petition date).

34   Since there is no allegation that a creditor of the Debtor was defrauded as a result of the sale of its assets and the mortgage granted to CPIF, Debtor fails to state a Section 544 claim.

35   The Debtor's principals may not have received the anticipated surplus consideration for the exchange as alleged but unless the Debtor's creditors were affected, it is not a fraudulent conveyance claim. Eberhard v. Marcu, 530 F.2d 122, 131 (2d Cir. 2008); Silverman v. Sound Around, Inc. (In re Allou Distribs.), 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008) (to establishing standing under Section 544, a trustee must identify a "triggering creditor" which could have avoided transfer as of the petition date).

**D.   The Claims Are Time Barred**

36   Any cognizable claim under Section 544 is time-barred. Section 546 of the Bankruptcy Code provides that "[a]n action or proceeding under section 544 . . . may not be commenced after the earlier of . . . 2 years after entry of the order for relief; or . . . the time the case is closed." 11 U.S.C. § 546(a); see, also, In re Sattler's, Inc., 73 B.R. 780 at 792 (Bankr.

SDNY 1987)(stating that powers under Section 544 are circumscribed by the statute of limitations in Section 546).

37    The order for relief was entered on February 13, 2017. (Compl. ¶4). This action was commenced more than two years later on March 29, 2019. Accordingly, the Debtor's purported claim under Section 544 is untimely and fails as a matter of law for this additional, independent reason.

### POINT III

### DEBTOR'S CLAIM FOR AVOIDANCE OF CPIF'S MORTGAGE PURSUANT TO U.S.C § 547 FAILS AS A MATTER OF LAW (COUNT FOUR).

38    In Count Four, the Debtor asserts a claim to partially avoid CPIF's mortgage pursuant to 11 U.S.C. § 547. This claim also fails as a matter of law for at least two reasons: (i) the Debtor failed to allege essential elements of a claim under Section 547, including a pre-petition transfer on account of an antecedent debt owed by the debtor; and (ii) it is untimely.

**A.    Debtor Failed To Allege A Pre-Petition Transfer On Account Of An Antecedent Debt**

39    Section 547 deals with preference claims and requires the Debtor to allege, among other things, that the defendant received an interest in the debtor's property "within 90 days before" the filing of the petition "on account of an anteceded owed by the debtor." 11 U.S.C. § 547(b)(4)(A) (emphasis added). Where, as here, the only transfer at issue allegedly occurred after the petition was filed, a claim under Section 547 fails as a matter of law. See In re New Century TRS Holdings, Inc., 505 B.R. 431, 439 (Bankr. D. Del. 201) (dismissing preferences claim because Section 547 "authorize[s] a trustee to seek to avoid certain pre-petition transfers only" (emphasis in original)); Nat'l Serv. Indus., Inc. v. Klein's of Plymouth,

14

Inc. (In re Klein's Dep't Store, Inc.), 42 B.R. 393, 394 (Bankr. E.D. Mich. 1984) ("The time of transfer is a crucial element. The transfer must take place prior to the filing of the bankruptcy petition [to prevail under section 547]."). Additionally, the Complaint does not allege any antecedent debt owed by the Debtor to Lender. As such, the Debtor has failed to allege essential elements of a claim under Section 547, and Count Four fails as a matter of law.

**B.**     **Any Cognizable Claim Under Section 547 Is Time-Barred.**

   40     Additionally, any cognizable claim under Section 547 is time-barred. Section 546 of the Bankruptcy Code provides that "[a]n action or proceeding under section...547...may not be commenced after the earlier of...2 years after the entry of the order for relief; or...the time the case is closed." 11 U.S.C. § 546(a); see In re Sattler's, Inc., 73 B.R. at 791 (stating that powers under Section 547 are circumscribed by the statute of limitations in Section 546).

   41     As noted above, the Debtor commenced this case more than two years after the entry of the order for relief. The Debtor's purported claim under Section 547 is thus untimely and fails as a matter of law for this additional, independent reason.

### POINT IV

### NO CAUSE OF ACTION FOR CONSPIRACY EXISTS UNDER NEW YORK LAW (COUNT NINE).

   42     In Count Nine, the Debtor asserts a claim for conspiracy under New York common law. This claim too fails as a matter of law. It is clear that under New York law, "conspiracy to commit a [fraud] is never of itself a cause of action." See, Alex & Alex of N.Y., Inc. v. Fritzen, 503 N.E.2d 102, 102 (N.Y. 1986)(quoting Brackett v. Griswold, 20 N.E. 376 (N.Y. 1889); see, also, Manning v. Turtel, 115 A.D.2d 712, 713 (2nd Dep't 1985)("it was error for the court not to dismiss the fraud and conspiracy cause of action . . . There is no substantive

tort of conspiracy."); Lamothe v. Town of Oyster Bay, 2009 WL 2160983 at *5 (EDNY, July 10, 2009)("[P]laintiffs' fifth cause of action id dismissed as 'New York does not recognize civil conspiracy to commit a tort as an independent cause of action.'")(quoting Sokol v. Addison, 293 A.D.2d 600 (2nd Dep't 2002). As such, Debtor cannot maintain Count Nine for conspiracy against CPIF and County Nine must be dismissed.

43    Moreover, to the extent that Debtor's complaint is based upon some amorphous theory of fraud, the Debtor does not even allege that CPIF made any misrepresentations to Debtor, let alone material misrepresentations. Nor does Debtor assert any of the elements of fraud against CPIF with particularity as is required. This warrants the dismissal of any such claims against CPIF. See, Pacella v. RSA Consultants, Inc., 164 A.D.3d 806 (2nd Dep't 2018).

## CONCLUSION

44    For the foregoing reasons and authorities Debtor's adversary proceeding complaint should be dismissed as against CPIF together with such other and further relief in favor of CPIF as the Court deems just and proper.

Dated: New York, New York
May 6, 2019

                    BUTLER, FITZGERALD, FIVESON
                     & McCARTHY
                    A Professional Corporation
                    Attorneys for Defendant CPIF Lending, LLC

                    By: /s/    David K. Fiveson
                    A Principal of the Firm
                    Nine East 45th Street, Ninth Floor
                    New York, New York 10017
                    (212) 615-2200
                    dfiveson@bffmlaw.com